ELSIE AWILDA MARTÍNEZ como madre con patria potestad sobre sus hijos menores GILBERTO y ARMANDO RIVERA, demandantes y recurrentes, *v.* GILBERTO RIVERA HERNÁNDEZ, demandado y recurrido.

*Número:* O-84-865          *Resuelto:* 6 de marzo de 1985

*Pedro Ernesto Cruz González,* abogado de la peticionaria; *José E. Rossy Valderrama,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Por tercera vez, a solicitud de la Sra. Elsie A. Martínez y mediante trámite de mostrar causa, terciamos en las controversias de las partes. La tardanza generada en su solución final nos mueve a pronunciarnos clara y terminantemente sobre algunos de los aspectos esenciales planteados, inclusive la corrección de la resolución del Tribunal Superior, Sala de San Juan, dictada el 17 de diciembre de 1984, contra la cual se recurrió mediante recurso de *certiorari.* Lo hacemos para evitar el continuado efecto multiplicador o litigioso negativo. Confiamos así despejar parte de las incógnitas que existen en torno a los procedimientos habidos ante el Tribunal Superior, Sala de San Juan, relacionados con una solicitud para ampliar el término de descubrimiento de prueba, un incidente de desacato, una reclamación de $20,494.97 en concepto de intereses por sentencia de alimentos y una petición de em-

bargo. Los protagonistas principales son los hijos menores Gilberto y Armando Rivera Martínez como alimentistas de su progenitor, el doctor en psiquiatría Gilberto Rivera Hernández.

## I

El foro de instancia, según la minuta, dio por finalizado el descubrimiento de prueba. Ordenó a las partes que en un término improrrogable de treinta (30) días sometieran un informe juramentado sobre ingresos y gastos a los fines de señalar la vista para discutir las mociones de rebaja y aumento de pensión alimenticia. La peticionaria Martínez enumeró distintas propiedades del demandado Rivera Hernández de gran valor, inclusive varios edificios y mencionó la práctica privada de éste en Kentucky. Como consecuencia pidió sin éxito que se le permitiera ampliar el descubrimiento de prueba. Adujo que esas propiedades y actividades contrastaban curiosamente con los ingresos limitados informados por el doctor Rivera Hernández de $1,354 mensuales y gastos de $1,372.61.

■ Estamos convencidos de la razonabilidad y pertinencia del planteamiento para fines de la moción de aumento de la pensión. Resolvemos que en justicia debe autorizarse el descubrimiento de prueba por un término adicional, el cual cubrirá las planillas de contribución sobre ingresos del doctor Rivera Hernández.

## II

■ La peticionaria Martínez también argumenta que procede ventilarse el incidente sobre desacato que ha promovido por pensiones atrasadas correspondientes a ocho (8) meses para un total de $2,900. Se desprende que el recurrido Rivera Hernández, bajo la tesis de que los menores están recibiendo directamente $400 de su pensión del Seguro Social, descontó y redujo unilateralmente dicha suma y está remitiendo sólo

$100. En una moción de rebaja de pensión informó esa determinación al foro de instancia. Ella insiste, al citar el caso de *Rubio Sacarello* v. *Roig*, 84 D.P.R. 344, 358 (1962), y el Art. 149 del Código Civil, que esa actuación equivale a interponer la figura de *compensación*, lo cual el mencionado precepto prohíbe al consignar *in fine* "[n]o es renunciable ni transmisible a un tercero el derecho a los alimentos. Tampoco pueden compensarse con lo que el alimentista deba al que ha de prestarlos". 31 L.P.R.A. sec. 568.

■ No tiene razón. El Art. 149 no gobierna la situación de autos. Al vedar la compensación, el Legislador intentó evitar que mediante la misma no se hagan realidad los pagos actuales, esto es, se extinga automáticamente la pensión de pleno derecho, que es la característica medular de la compensación. *Ramos* v. *Caparra Dairy, Inc.*, 116 D.P.R. 60 (1985). La premisa que anima este enfoque es la indispensabilidad del pago en concepto de alimentos para cubrir las necesidades ordinarias e imprescindibles de la vida, de otro modo desatendidas. J. M. Manresa, *Código Civil Español*, 7ma ed., Madrid, Ed. Reus, 1956, T. I, págs. 845–848. "Semejante prohibición es racional, ya que en caso contrario se desvirtuaría la finalidad de la deuda alimenticia." P. Beltrán de Heredia, *Comentarios al Código civil y compilaciones forales*, Jaén, España, Ed. Rev. Der. Privado, 1978, T. III, Vol. 2, pág. 47. El "sustento de la persona no es un simple derecho individual sujeto a la libre disposición del particular, y sí un interés protegido en vista de un interés público". F. Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1960, T. IV, pág. 695.

■ En las circunstancias de autos no se está oponiendo *compensación* alguna. No se afecta el postulado asistencial. Simplemente, a través del sistema de Seguro Social federal el doctor Rivera Hernández está satisfaciendo parte sustancial de la pensión. Como método de pago es válido. Ni el texto ni

espíritu del Art. 149 lo impide. Aclaramos que este pronunciamiento es sin menoscabo de que la peticionaria Elsie A. Martínez pueda demostrar la procedencia de un aumento a la pensión fijada. Sólo resolvemos que el pago a través de la pensión de Seguro Social es judicialmente válido y aceptable.

## III

Finalmente, (1) la peticionaria nos plantea vehementemente la tardanza del tribunal a quo en resolver si proceden o no intereses sobre la sentencia de alimentos. Desde que emitimos la orden de mostrar causa intimamos que era acreedora a una pronta determinación. La resolución posterior del foro de instancia negándolos nos permite despejar la duda. Erró.

Su negativa estuvo basada en que la Regla 44.3 (a) de Procedimiento Civil sólo autoriza "intereses al tipo *legal* en toda *sentencia* que ordena el pago de dinero", (énfasis nuestro) y que un dictamen en casos de alimentos no goza propiamente del carácter de una sentencia final ordinaria —y no constituye cosa juzgada— pues se reclaman y dispensan al ritmo de las circunstancias cambiantes. Como consecuencia, concluyó que la referida regla era inaplicable.

Rehusamos refrendar esa interpretación rigurosamente gramatical.

El deber de alimentos se funda en principios universalmente reconocidos de solidaridad humana generados por el derecho natural de la vida e imperativos de los vínculos familiares. *Milán Rodríguez* v. *Muñoz*, 110 D.P.R. 610, 612–614 (1981); J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. Der.

---

(1) Respecto a su solicitud de que se embarguen fondos del cheque del Seguro Social del demandado Rivera Hernández, según provisto por la Ley Federal Núm. 93–647 (88 Stat. 2357, 42 U.S.C. sec. 659) —para cubrir atrasos en el pago de pensión alimenticia— basta consignar que en virtud de lo precedentemente resuelto, ella debe determinar si es o no académica tal solicitud. De ser ello necesario, deberá reproducir ante el foro de instancia el planteamiento e ilustrarlo apropiadamente sobre su procedencia por cumplir todos los requisitos del mencionado estatuto. No lo ha hecho ante nos.

Privado, 1982, T. V, págs. 439–441. Cuando se ha determinado su importe y hecho valer, incuestionablemente configura una obligación legal que penetra la dimensión patrimonial. "En cuanto al que, por sentencia o convenio, se ha resuelto en unas prestaciones concretas —acaso en el pago de una pensión—, el derecho mismo representa una fuente de pretensiones continuadas o periódicas, de carácter personalísimo y claudicante, susceptible de aseguramiento pero sujeto éste a la variabilidad de la deuda; *mientras el derecho a las pensiones vencidas o a la indemnización por las prestaciones incumplidas constituye un crédito corriente y negociable.*" (Énfasis suplido.) J. L. Lacruz Berdejo y F. A. Sancho Rebullida, *Derecho de Familia*, Barcelona, Ed. Bosch, 1982, T. IV, pág. 74. El remedio judicial último en estos casos es de carácter económico, una cantidad de dinero a ser satisfecha por el alimentante. De ordinario, "permanente en el tiempo, esa prestación se traduce, por algo así como un tracto sucesivo, en una cuota dineraria periódica —generalmente mensual— que el obligado debe pagar al beneficiario. . . . [esa] condena respecto del obligado indudablemente importa un pronunciamiento declarativo de la existencia del crédito, y por lo tanto, el *quantum* dinerario se traducirá en la fijación de una cuota periódica que se reputará devengada desde que la obligación se hizo exigible, o sea desde la mora del obligado". (Citas omitidas.) E. A. Zannoni, *Divorcio y obligación alimentaria entre cónyuges*, 2da ed., Buenos Aires, Ed. Astrea, 1977, pág. 187. Bajo este razonamiento, este autor concluye que se trata de un caso típico de mora. Añade "[l]a extrapatrimonialidad del fundamento asistencial no implica negar la patrimonialidad de la prestación en que se traduce el deber de asistencia. Y esta patrimonialidad de la prestación es lo que permite sin dificultad caracterizar a la obligación como tal, sujeta por ende a los principios generales del derecho patrimonial en lo relativo a su ejecución, como claramente lo enseña la doctrina moderna". Íd., pág. 190.

■ Resolvemos que las sentencias y resoluciones en casos de pensiones de alimentos devengan intereses legales por mora. Es una consecuencia natural de una obligación de dinero. Se computan desde el momento en que se dictó la sentencia, o si es de mes a mes, desde que venció, o debió ser satisfecha.

Razones de peso abonan esta decisión. Concluir lo contrario atentaría contra el espíritu de impartir justicia rápida y económica. Menoscabaría el carácter real, actual e impostergable de los alimentos. No es la etiqueta ni el título del derecho lo determinante, sino su finalidad, que necesariamente estará condicionada al tiempo y espacio de toda obligación según el pronunciamiento judicial correspondiente. De sostener que la sentencia del Tribunal Superior, Sala de San Juan (Hon. Charles Juliá) de 11 de agosto de 1975 no generó intereses hasta el 29 de mayo de 1982, fecha en que se otorgaron las escrituras en venta de ejecución judicial: ¿no estaríamos estimulando en estos casos mayores atrasos a los que diariamente —de manera inquietante— se incurren? ¿No perjudicaríamos indirectamente el bienestar de los menores con esa restrictiva visión? Una cosa sí es innegable, no sólo premiaríamos la morosidad del alimentante sino que contribuiríamos a sobrecargar los pesados calendarios en los foros de instancia.

■ En resumen, no se nos ha demostrado ni persuadido que una sentencia de alimentos vencidos no genere intereses conforme la Regla 44.3 de Procedimiento Civil. Sin embargo, al igual que dispusimos en nuestro dictamen del 29 de febrero de 1984, en un recurso entre las mismas partes (O-83-775) carecemos de los elementos de juicio para determinar el cómputo exacto. Debe esclarecerse este aspecto como parte del trámite ulterior. El foro de instancia resolverá preferentemente este incidente.

■ Para ultimar, nos preocupa la lentitud en el procesa-

miento judicial de casos de pensiones alimenticias. Es alarmante. Los estudios recientes así lo corroboran. El notable esfuerzo de los jueces y demás funcionarios en remediarlos ha sido infructuoso. Parte del complejo problema radica en las actitudes de los protagonistas, abogados y jueces. Pero también en la naturaleza del asunto. Un número sustancial de los decretos de divorcio contienen imperativamente dictámenes sobre pensiones alimenticias. Su ejecución posterior genera a corto y largo plazo un sinnúmero de incidentes relativos, entre otros, a su incumplimiento, aumento o disminución de la pensión. *Apuntes sobre procedimientos judiciales en torno a la familia*, Secretariado de la Conferencia Judicial, págs. 27–29 (1984). El método clásico de requerir una mostración de causa al alimentante moroso, con la consabida contratación de abogado por la parte promovente, radicación de documentos, notificación y citación, es costoso, complejo y enrevesado. Atenta contra los intereses de los menores de edad —verdaderos sujetos tutelados del derecho— al propiciar tardanzas indebidas. "[E]l bienestar y la salud física y emocional de los menores se ve comprometida por la lentitud que crea una maquinaria judicial congestionada." *Apuntes sobre procedimientos judiciales en torno a la familia*, supra, pág. 29. La situación reclama urgente intervención del Poder Legislativo. Entretanto, hacemos un llamado a los tribunales de justicia del país para que con creatividad e imaginación intenten solucionar con mayor prontitud y prioridad estas contiendas.

Por los fundamentos expuestos, *se expedirá el auto y se dictará sentencia que incorpore a la misma todos los pronunciamientos antes vertidos. La Resolución del 17 de diciembre de 1984 quedará, en lo pertinente, también modificada. En este aspecto se deja sin efecto el levantamiento de embargo de propiedad inmueble. Continuarán los trámites compatibles con esta decisión.*