# 97 DTA 118

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**
**PANEL I**

WILLIAM COTTO RIVERA
Peticionario

v.

ROSA M. FEBUS SANTIAGO
Recurrida

Núm. KLCE-97-00186

San Juan, Puerto Rico, a 15 de mayo de 1997

Panel integrado por su Presidente, Juez Brau Ramírez,
y los Jueces  Colón Birriel y Pesante Martínez

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El peticionario, William Cotto Rivera (Cotto Rivera), nos solicita que revisemos una *"Resolución y Orden"* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 18 de diciembre de 1996, notificada de su archivo en autos el 5 de febrero de 1997. Mediante el dictamen en cuestión se aprobó parcialmente un informe rendido por la Examinadora de Pensiones Alimentarias (Examinadora), B. Carrasquillo Rosa, el 13 de noviembre de 1996, imponiéndosele a Cotto Rivera, en consideración al mismo y entre otras cosas, una pensión alimentaria de $700.00 mensuales a favor de dos (2) de sus hijos menores de edad y retroactiva a octubre de 1995, fecha en que la recurrida, Rosa M. Febus Santiago (Febus Santiago), solicitó el aumento de pensión.

Luego de un análisis ponderado del recurso presentado, denegamos la expedición del mismo. A continuación los hechos relevantes para la correcta solución del recurso.

### II

Según surge de los autos, durante su relación conyugal Cotto Rivera y Febus Santiago procrearon tres (3) hijos, a saber: *"Fulana"* Cotto Febus, William Cotto Febus (1-7-88) y Sandra Cotto Febus (23-9-89). Mediante sentencia de 30 de junio de 1988, el entonces Tribunal Superior decretó el divorcio de éstos fijándose una pensión alimentaria de $300.00 mensuales para los referidos menores.

Así las cosas, el 8 de diciembre de 1994, Febus Santiago solicitó aumento de pensión. Luego de la presentación de varias mociones--*"Moción en Oposición al Aumento"* y *"Réplica a la Moción en Oposición"*--, el 16 de marzo de 1995, las partes estipularon una pensión de $300.00 mensuales a favor de la menor Sandra Cotto Febus. Aparentemente, la otra hija, Fulana Cotto Febus, se había casado y el menor William Cotto Febus vivía y estaba bajo la custodia de su padre, el peticionario Cotto Rivera. Dicha estipulación fue aprobada mediante resolución de 7 abril de 1995, luego de rendido el correspondiente informe por la Examinadora.

Posteriormente, el 11 de octubre de 1995, esto es, seis (6) meses después, Febus Santiago solicitó un nuevo aumento de pensión. Alegó, entre otras cosas y en lo pertinente, que desde el día 12 de agosto de 1995 el menor William Cotto Febus, de dieciseis (16) años de edad y quien residía con Rivera hasta ese entonces, se había trasladado a vivir con ella a su residencia; que evidentemente las circunstancias bajo las cuales se había fijado la pensión alimentaria habían cambiado sustancialmente, por lo que el alimentante (Cotto Rivera) tenía la obligación de alimentar a ambos menores, debiéndose aumentar la pensión alimentaria existente.

Finalmente, luego del señalamiento y transferencia de varias vistas, el 7 de noviembre de 1996 se efectuó la vista para dilucidar la procedencia del aumento solicitado por Febus Santiago. Conforme al testimonio bajo juramento de las partes y radicadas las planillas de información personal y económicas, la Examinadora procedió a hacer amplias y fundamentadas determinaciones de hechos y derecho, las cuales se consignaron en su totalidad en el informe que ésta rindiera el 13 de noviembre de 1996.

Acto seguido, el 18 de diciembre de 1996, el Tribunal de Primera Instancia procedió a la aprobación parcial del referido informe, aumentando la pensión alimentaria a $700.00 mensuales.

Inconforme con la determinación de instancia Cotto Rivera recurre ante nos alegando que la Examinadora cometió varios errores en el análisis del caso y en sus recomendaciones a instancia, que se resumen como sigue: Carencia de motivos fundados para aumentar la pensión alimentaria a la menor Sandra Cotto Febus; imputarle un ingreso de $100.00 mensuales por sus labores como mecánico, a pesar de que su taller de mecánica fue destruido por el huracán *"Hortense"*; dejar de tomar en consideración para establecer el ingreso neto, y por consiguiente para establecer el monto de la pensión, ciertas partidas de gastos mensuales; establecer como su --Cotto Rivera-- negocio principal una cafetería-colmado, cuando verdaderamente de lo que se trataba era de una cafetería para estudiantes; imputarle un ingreso mensual de $200.00 por concepto de la renta de una limosina, cuando las pocas veces que la había rentado cobró menos de lo normal, y no se le da uso por estar en venta.

## III

En esencia, los errores señalados por Cotto Rivera se circunscriben a determinar si erró el foro de instancia en la apreciación que hiciera de la prueba que tuvo ante su consideración.

Antes de comenzar con la discusión del derecho aplicable a los hechos del presente caso debemos señalar, que nuestro Tribunal Supremo ha sido enfático al sostener que los dictámenes emitidos por el Tribunal de Primera Instancia merecen nuestra deferencia y respeto. *Pueblo v. Somarriba García,* 131 D.P.R. ___ (1992), **92 J.T.S. 109,** a la pág. 9869. Consistentemente ha expresado que el foro apelativo no intervendrá con la apreciación que de la prueba desfilada a nivel de instancia hagan dichos tribunales por estar éstos en mejor posición para aquilatar la misma. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987). Tampoco los tribunales apelativos intervendrán con las determinaciones de hechos y adjudicación de credibilidad realizada por el tribunal *a quo* en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Quiñones López v. Manzano Pozas,* 141 D.P.R. ___ (1996), **96 J.T.S. 95,** a la pág. 1305; *Rodríguez Amadeo v. Santiago Torres,* ___ D.P.R. ___ (1993), **93 J.T.S. 106,** a la pág. 10901, nota 12; *Gallardo v. Petiton y V.T.N., Inc.,* 132 D.P.R.___ (1992), **92 J.T.S. 158,** a la pág. 10132; *Pérez v. Col. de Cirujanos Dentistas de P.R.,* 131 D.P.R. ___ (1992), **92 J.T.S. 124,** a la pág. 9943; *Torres Ortiz v. Plá,* 123 D.P.R. 637, 654 (1989); *Valencia, Ex-parte,* 116 D.P.R. 909 (1986). Cabe señalar además, que constituye un principio rector de nuestro ordenamiento jurídico que la revisión de una sentencia se da contra la decisión del tribunal y no contra sus fundamentos. *Toledo Maldonado v. Cartagena Ortiz,* 132 D.P.R. ___ (1992), **92 J.T.S. 173,** a la pág. 10228; *Zorniak Air Serv. v. Cessna Aircraft Co.,* 132 D.P.R. ___ (1992), **92 J.T.S. 167,** a la pág. 10185. En ausencia de prueba en contrario se presume la corrección de los procedimientos judiciales. *Pueblo v. López Guzmán,* ___ D.P.R. ___ (1992), **92 J.T.S. 142,** a la pág. 10063.

Ahora bien, en relación a lo que nos ocupa, sabido es el hecho de que las cuestiones relativas a las pensiones alimenticias y las dinámicas que emanan de dicho concepto, ya sean sociales, jurídicas o económicas, están revestidas del más alto grado, rango y prioridad en el esquema de intereses públicos. *Rodríguez Avilés v. Rodríguez Berruff,* 117 D.P.R. 616 (1986); *Ex-parte Valencia-Riollano,* 116 D.P.R. 909 (1986); *Negrón Rivera v. Bonilla, Ex-Parte,* 120 D.P.R. 61 (1987); *Piñero Crespo v. Gordillo Gil,* 122 D.P.R. 246 (1988). Esto debido a que, entre los muchos fundamentos esbozados, se encuentran *"el derecho a la vida", Martínez v. Rivera Hernández, 116 D.P.R. 164 (1985),* y *"los principios reconocidos de solidaridad humana", Rodríguez Sanabria v. Soler Vargas,* 137 D.P.R. ___ (1994), **94 J.T.S. 59.**

La obligación de ambos padres de proveer alimentos a sus hijos menores de edad, no emancipados, emana de las disposiciones de los Arts. 143 y 153 del Código Civil, 31 L.P.R.A. secs. 562 y 601, respectivamente, y del Art. 4 de la Sec. III de la Ley Especial de Sustento de Menores (L.E.S.M.), Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 L.P.R.A. sec. 503.

A estos efectos nuestro Tribunal Supremo ha resuelto, en lo pertinente, que:

*"La obligación alimenticia que surge del Art. 143 se refiere al caso del padre o de la madre de hijos no emancipados que no viven en su compañía y sobre los cuales no tiene la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos. A diferencia de la obligación bajo el ejercicio de la patria potestad [Art. 153], el deber de proveer alimentos bajo el articulado del Código que regula los alimentos entre parientes -142 al 151 (31 L.P.R.A. secs. 561-570)- se basa en el estado de necesidad del hijo y depende de la condición económica del padre alimentante. Se distingue, además, en que la obligación es exigible cuando se demuestra la necesidad de alimentos del hijo y son reclamados judicialmente."* Art. 147 (31 L.P.R.A. sec. 566). ■

En adición, el Art. 146 del Código Civil, 31 L.P.R.A. sec. 565, refiriéndose a las disposiciones del Art. 143 establece que:

*"La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo."* ■

Es decir, la cuantía de los alimentos será proporcional a los recursos del que está en la obligación de darlos (alimentante) y a las necesidades del que tiene derecho a recibirlos (alimentista), y se reducirá o se aumentará en proporción a los recursos del primero y a las necesidades del segundo. Como consecuencia de este requisito de proporcionalidad, la cuantía de la pensión se aumenta o reduce a medida que aumenten o disminuyan ambos factores. *Guadalupe Viera v. Morrell,* 115 D.P.R. 4, 14 (1983). Al emitir una determinación a tales efectos, el juzgador deberá salvaguardar el interés público dirigido a proteger el bienestar del menor. *Galarza Rivera v. Mercado Pagán,* 139 D.P.R.___ (1995), **95 J.T.S. 164,** a la pág. 418. *Rodríguez Rosado v. Zayas Martínez,* 133 D.P.R. (1993), **93 J.T.S. 75,** a la pág. 10721.

Cónsono con lo anterior, ha quedado claramente establecido que una estipulación o dictamen judicial sobre pensión alimentaria puede ser modificado siempre que el alimentante o el alimentista demuestre que ha sufrido cambios sustanciales que afecten su capacidad para cumplir en el caso del alimentante o en sus necesidades en el caso del alimentista. Véase, *Negrón Rivera v. Bonilla, Ex parte, supra,* a la pág 73. Corresponde al promovente de la modificación de la pensión alimentaria demostrar que las circunstancias existentes al momento de fijarse la misma --como en este caso-- han cambiado de forma sustancial. Esto es, sólo se modificarán las estipulaciones en torno a la pensión fijada cuando se le demuestre al tribunal que verdaderamente ha ocurrido un cambio sustancial que afecte la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas. La determinación final en cuanto a si se han manifestado los cambios sustanciales alegados queda a la sana discreción del juzgador. *Negrón, supra,* a las págs. 76-78.

Por otro lado, la obligación de alimentar a los hijos no emancipados ha sido, a su vez, instrumentada en la L.E.S.M., *supra,* y en las Guías Para Determinar y Modificar Pensiones Alimenticias en Puerto Rico (Guías), adoptadas por el Secretario de Servicios Sociales en virtud de la Ley Núm. 171 del 20 de junio de 1968, Ley Orgánica del Departamento de Servicios Sociales, 3 L.P.R.A. secs. 2101 y siguientes. Es decir, tanto la L.E.S.M. como las Guías tienen como propósito principal el lograr la uniformidad y el fortalecimiento de los sistemas de determinación, recaudación y distribución de las pensiones alimenticias en beneficio de los menores de edad. Véase Exposición de Motivos de la L.E.S.M., *supra,* pág. 750.

El Art. 19 de la L.E.S.M., 8 L.P.R.A. sec. 518, establece que a partir del 13 de octubre de 1989, en todo caso en que se solicite la fijación o modificación de una pensión alimentaria, será mandatorio que el tribunal determine el monto de la misma utilizando para ello las referidas Guías. ■

Las Guías, por su parte, disponen, para efectos de la fijación de pensiones alimentarias, que en los casos en que no haya ingreso se imputará por el juez, a su discreción, un ingreso conocido como ingreso imputado.

Se entiende por ingreso imputado conforme a las Guías lo siguiente: ■

*"....aquel ingreso que el tribunal atribuye al padre alimentante cuando exista evidencia de que el alimentante está desempleado por voluntad propia, pero anteriormente había desempeñado alguna labor productiva o cuando haya evidencia de que el alimentante por voluntad propia abandonó su empleo o redujo su capacidad productiva para eludir las responsabilidades alimenticias para con sus hijos. Las medidas a tomar y el ingreso que fije estarán a la discreción del juez tomando en consideración la empleabilidad del individuo y su historial de trabajo. En casos en que no exista información válida al respecto, el juez podrá aplicar el salario mínimo prevaleciente en el área. También se podrá imputar ingreso cuando el padre alimentante abandona su trabajo para irse a estudiar con el propósito de no cumplir su deber de alimentante. Su historial ocupacional podrá utilizarse como base para fijar el ingreso neto a imputarse....".*

**En cualquier circunstancia, el ingreso imputado quedará a la discreción del juez.** (Enfasis nuestro.)

Por otro lado, un juez, al fijar una pensión alimentaria, debe exponer los criterios utilizados y los fundamentos jurídicos específicos que lo llevaron a tomar su decisión. Sus determinaciones de hechos y conclusiones de derecho deben ser lo suficientemente específicas para que un tribunal esté en

**151**

posición de resolver cualquier impugnación, incluyendo los cómputos básicos resultantes de la aplicación de las Guías. Véanse, además, *Libby Funari Altobelli v. Resto Rodríguez,* SNCE-93-0264, a la pág. 27; *Nieves Silva v. Reyes Calero,* SNCE-93-0172, a la pág. 11 (Tribunal de Apelaciones de Puerto Rico, Sección Norte, sentencias del 20 de agosto y 30 de junio, respectivamente, del año 1993).

En el caso de autos, no cabe duda alguna de que el hecho de que el menor William Cotto Febus haya regresado a convivir con su madre, la recurrida y promovente Febus Santiago, constituye un cambio sustancial de las circunstancias existentes antes de que se solicitara el aumento de la pensión; ello no está en controversia. Por otro lado, el informe rendido por la Examinadora y que posteriormente fuera adoptado por el tribunal, es uno amplio, fundamentado y razonable, todo ello en consideración a la prueba aportada por las partes. Nada en las alegaciones o documentos sometidos por Cotto Rivera refuta la razonabilidad de las determinaciones a que llegó la Examinadora. Esto es, Cotto Rivera no ha demostrado ante este Tribunal prueba que razonablemente reduzca o menoscabe el peso de la evidencia suministrada por Febus Santiago, hasta el punto de dejar establecido que el Tribunal de Instancia actuó arbitrariamente. Como expusieramos antes, la apreciación que de la prueba haga el foro de instancia debe prevalecer, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Gallardo, supra,* a la pág. 10132. Corresponde a Cotto Rivera demostrar la presencia de estos elementos, lo cual no ha hecho. Siendo ello así, forzoso es concluir que el foro de instancia no cometió los errores señalados.

Recalcamos además, que tampoco es nuestra función, a nivel apelativo, pasar juicio sobre la credibilidad de los testimonios ofrecidos ante el foro de instancia ni debemos sustituir el criterio del juzgador a ese nivel por el nuestro. *Ramos Acosta v. Caparra Dairy,* D.P.R. 357, 365 (1982).

Por los fundamentos expresados, denegamos la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 118

**1.** *Guadalupe Viera v. Morrell,* 115 D.P.R. 4, 13 (1983).

**2.** Véanse: *Key Nieves v. Oyola Nieves,* 116 D.P.R. 261 (1985), y *Guadalupe Viera v. Morell, supra.* Véase, además, Art. 19 de la Sec. IV de la L.E.S.M., *supra,* 8 L.P.R.A. sec. 518 (Supl. 1996).

**3.** En cuanto a los factores que han de tomarse en consideración al determinar la pensión alimenticia véase, 8 L.P.R.A. sec. 518.

**4.** Véase Guías Para Determinar y Modificar Pensiones Alimenticias en Puerto Rico. Art. V(B). Sección 1.