# 2008 DTA 120

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VI**

CARLOS FONSECA ZAYAS
Demandante-Peticionario

v.

BRENDA RODRÍGUEZ MELÉNDEZ
Demandada-Recurrida

Núm. KLCE-2008-01182

San Juan, Puerto Rico, a 10 de octubre de 2008

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso presentando por el señor Carlos Fonseca Zayas nos plantea las siguientes interrogantes: ¿los bienes recibidos en concepto de herencia constituyen ingreso para fines de la Ley de Sustento de Menores? Además, debemos responder ¿cómo determinar el impacto de una herencia en el cómputo de la pensión alimentaria?

### I

Veamos los hechos pertinentes al asunto que tenemos ante nuestra consideración, según surgen de las alegaciones y los documentos sometidos a este tribunal.

El señor Fonseca Zayas radicó, en agosto de 2005, una demanda sobre alimentos y solicitó al tribunal que se estableciera una pensión alimentaria en beneficio de su hijo de siete meses de edad. De las alegaciones de la demanda se desprende que el menor está al cuidado de su madre, la señora Brenda Rodríguez Meléndez. Tres meses más tarde, el tribunal ordenó al señor Fonseca el pago de una pensión alimentaria provisional de $522.05 mensuales.

El caso continuó su curso hasta que las partes comparecieron, el 18 de enero de 2008, a una vista ante la examinadora de pensiones. En el Informe redactado por la examinadora, se determinó que los activos del señor Fonseca sumaban $170,000, de los cuales $48,500 era dinero depositado en una cuenta bancaria. La examinadora imputó al señor Fonseca un salario mensual de $3,000 y recomendó que se impusiera una pensión de $918.13 mensual a favor del menor. El tribunal de instancia acogió el informe de la oficial examinadora de pensiones y fijó la pensión alimentaria en $918.13 mensual en marzo de 2008.

La señora Rodríguez solicitó al tribunal de instancia que reconsiderara la orden de pensión alimentaria. Planteó, entre otras cosas, que el tribunal no tomó en consideración para determinar la pensión alimentaria todos los activos del señor Fonseca. Señaló que correspondía dividir los $48,500 depositados en el Banco en doce

meses y dicha suma imputarla, en adición a los $3,000, como ingreso mensual del señor Fonseca. A base de ello solicitó que se reconsiderara la pensión alimentaria otorgada y se le imputara al señor Fonseca un salario mensual de $7,075.

A la moción de reconsideración se opuso el señor Fonseca y alegó que el dinero en cuestión fue recibido como pago de herencia en octubre de 2007 y que esos activos no forman parte de sus ingresos. Reclamó que la herencia recibida de su progenitor en octubre de 2007 no fuera computada para determinar la pensión.

El tribunal de instancia emitió una orden, en abril de 2008, para remitir el caso nuevamente a una examinadora de pensiones.

La examinadora de pensiones enmendó su informe y recomendó al tribunal que le imputara al señor Fonseca un ingreso mensual de $7,075 para el 2007 y que determinara una pensión alimentaria de $1,956.84 mensual. Para establecer el ingreso mensual, la examinadora dividió el dinero de la cuenta de banco producto de la herencia entre doce meses y los sumó a los $3,000 de salario mensual imputado.

Con el beneficio del informe enmendado, el tribunal de instancia emitió una nueva sentencia y fijó al señor Fonseca una pensión alimentaria de $1,956.84 mensuales.

Inconforme con esta determinación, el señor Fonseca radicó una moción de reconsideración. En lo pertinente a este recurso, informó en dicho escrito que el tribunal se equivocó al imputar como ingreso las sumas recibidas en concepto de herencia y que los ingresos que se le imputaron fueron brutos, no netos.

El Tribunal de Primera Instancia refirió el caso a la examinadora de pensiones para que evaluara los argumentos esbozados en el escrito de reconsideración del señor Fonseca. Al evaluar los planteamientos de las partes, la examinadora de pensiones solicitó al juez de instancia que determinara como cuestión de derecho si la herencia formaba parte de los ingresos de un alimentante.

Finalmente, el Tribunal de Primera Instancia emitió una resolución mediante la cual dispuso que la herencia es parte del cómputo para determinar la pensión alimentaria. En cuanto a esta controversia, declaró a la moción de reconsideración no ha lugar.

Ante la negativa del tribunal de instancia de excluir la herencia en el cómputo de la pensión, el señor Fonseca Zayas nos solicita, mediante un recurso de *certiorari,* que revoquemos dicha determinación. Argumenta, en síntesis, que la definición de ingreso, contenida en la Ley de ASUME y la Guías para Determinar y Modificar las Pensiones Alimentarias, no dispone expresamente que los bienes hereditarios forman parte del cómputo de la pensión. Plantea, además, que la herencia no es recurrente y no debe considerarse para el cómputo de la pensión alimentaria. La recurrida no ha comparecido.

## II
### El concepto de alimentos y la capacidad económica del alimentante

Los padres están obligados a alimentar a sus hijos en todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica del alimentista. Art. 142 del Código Civil, 32 L.P.R.A. Sec. 565. El derecho de los hijos a recibir alimentos y la correlativa obligación de los padres a darlos cuando corresponda, tienen su génesis en el derecho natural, en los lazos indisolubles de amor, respeto y de solidaridad humana. *Martínez v. Rivera Hernández,* 116 D.P.R. 164, 168 (1985); *Milán Rodríguez v. Muñoz,* 110 D.P.R. 610, 613-614 (1981).

El fundamento del derecho alimentario se encuentra en el derecho a la vida, garantizado en nuestra constitución. *Argüello v. Argüello,* 155 D.P.R. 62, 70 (2001); *Rodríguez v. Depto. Servicios Sociales,* 132 D.P.R.

617, 630-631 (1993). Es por esto que los casos relacionados con alimentos de menores están revestidos del más alto interés público. *Rodríguez Sanabria v. Soler Vargas*, 135 D.P.R. 779, 784 (1994); *Rodríguez v. Depto. Servicios Sociales*, *supra*, pág. 629; *Robles v. Otero de Ramos*, 127 D.P.R. 911, 928 (1991).

El derecho a recibir alimentos es de tan alto interés público que el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. *Chévere v. Levis*, 150 D.P.R. 525, 535 (2000); *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785, 792 (1993). De igual forma, el Tribunal Supremo se ha expresado en innumerables ocasiones sobre distintos aspectos del derecho a recibir alimentos.

En cuanto a la manera para determinar la cuantía de la pensión que el alimentante deberá pagar al alimentista, nuestro ordenamiento establece lo siguiente:

*"La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y las necesidades del segundo."* Artículo 146 del Código Civil, 32 L.P.R.A. Sec. 565.

Respecto a este artículo, el Tribunal Supremo ha interpretado que para determinar la pensión alimentaria debe tomarse en cuenta los siguientes dos criterios: (1) los recursos y medios de fortuna del alimentante, de forma tal que se pueda determinar su capacidad económica para cumplir su obligación alimentaria hacia su alimentista, y (2) las necesidades del alimentista, es decir, cuánto necesita éste para cubrir sus necesidades de sustento, habitación, vestido, asistencia médica y educación, conforme su posición social. *Martínez v. Rodríguez,* 160 D.P.R. 145, 153 (2003); Sarah Torres Peralta, *La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico*, San Juan, Puerto Rico, Publicaciones STP, 2007, Tomo I, pág. 7.02.

En cuanto al primer criterio, la Ley Orgánica para el Sustento de Menores (Sustento de Menores) ordena la redacción de unas guías para determinar, basado en criterios numéricos y descriptivos, el cómputo de la pensión alimentaria para menores de edad. 8 L.P.R.A. sec. 518 (a). De igual forma, establece que las guías, además de tomar en consideración los ingresos del alimentante para determinar los recursos económicos de éste, tomarán en consideración su capital o patrimonio total. 8 L.P.R.A. sec 518 (b).

De conformidad con el mandato legislativo, el Departamento de la Familia aprobó en el 2006 las Guías para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico (Guías Alimentarias). Reglamento 7135 de 24 de abril de 2006. Estas Guías establecen el procedimiento para fijar, modificar o revisar las pensiones alimentarias.

Las Guías Alimentarias establecen varios pasos para determinar la capacidad económica del alimentante. Es necesario, en primer lugar, determinar el ingreso bruto anual, a base de la definición de ingresos que provee el Artículo 4(15) de las Guías Alimentarias. Art. 7(1) (a) de las Guías Alimentarias.

Una vez determinado el ingreso bruto, se hacen las deducciones requeridas por ley, para llegar entonces al ingreso neto. Art. 4 (18) de las Guías Alimentarias. Art. 2 de la Ley de Sustento de Menores, 8 L.P.R.A. sec 501 (17); Art. 4 (18) Guías Alimentarias. Ese ingreso neto anual se divide entre doce meses para obtener el ingreso neto mensual y con ello hacer los correspondientes cómputos que disponen las guías para poder determinar la pensión alimentaria.

### III

La Ley de Sustento de Menores, así como las Guías Alimentarias, definen *ingresos* como la ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales o derivado de profesiones, oficios, industrias, negocios, comercio o ventas. Al igual que de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; o cualquier ganancia,

beneficio, rendimiento o fruto derivado de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad, entre otros. 8 L.P.R.A. sec. 501 (16); Art. 4(15) de las Guías Alimentarias.

A base de esta definición es que el señor Fonseca alega que el dinero recibido en herencia queda excluido del cómputo de la pensión. Plantea que el legislador quiso excluir la herencia de la definición de ingresos dispuesto en la Ley de Sustento de Menores y en las Guías Alimentarias y que, por lo tanto, los bienes recibidos de un causante no pueden ser utilizados para la fijación de la pensión alimentaria. El peticionario no tiene la razón.

La herencia no está excluida de los recursos o medios de fortuna de un alimentante, o sea, del patrimonio total de una persona y, por lo tanto, deben ser considerados para fijar la pensión.

Nótese que la Ley de Sustento de Menores dispone que se tomará en consideración para determinar la capacidad económica de un alimentante, no sólo el ingreso neto ordinario, sino el capital o patrimonio total de la persona obligada a pagar una pensión alimentaria. 8 L.P.R.A. sec. 518 (b). No obstante, para determinar el ingreso bruto es que se utiliza la definición de *ingreso* que disponen las Guías Alimentarias y es, una vez hechas las deducciones obligatorias y determinado el ingreso neto, que se suma el patrimonio total del alimentante para poder calcular la pensión alimentaria.

Es decir, la definición de ingresos que dispone las guías se utiliza para determinar el ingreso neto del alimentante solamente. Ello no implica que los ingresos que aparecen en la definición son las únicos recursos económicos que cuenta el obligado a prestar alimentos, ya que se toma además en consideraron el capital o patrimonio total del alimentante.

Sobre este particular, la tratadista Torres Peralta explica que el patrimonio total del alimentante incluye el total del dinero que recibe la *"persona responsable de suministrar los alimentos..., independientemente de cuál es la fuente o la procedencia de los dineros"* S. Torres Peralta, *op.cit.*, pág. 4.31. Esto es así, porque el patrimonio de una persona no se circunscribe a los ingresos que pueda recibir producto de salarios, sino a cualquier cosa que pueda constituir riqueza o fortuna y que sea susceptible de una valoración pecuniaria. Véase, *Vda. de Delgado v. Boston Ins. Co.*, 101 D.P.R. 598, 606 (1973); *Betancourt v. Larregui*, 27 D.P.R. 606, 607 (1919).

Además, el citado Art. 146, *supra*, dispone claramente que los alimentos se reducirán o aumentarán en proporción a los recursos del alimentante y las necesidades del que los recibe. *Martínez v. Rodríguez, supra*, pág. 153. El recibo de una herencia pagada en dinero representa un aumento en los recursos del alimentante.

Resolvemos, por tanto, que los activos de una herencia forman parte del patrimonio y se tomarán en consideración para determinar la capacidad económica del alimentante para proveer alimentos. Determinar lo contrario equivaldría a pasar por alto la verdadera situación económica del alimentante en perjuicio de los hijos menores de edad. Actuó correctamente el tribunal de instancia al no excluir los bienes recibidos en concepto de herencia para el cómputo de la pensión alimentaria.

## IV

Lo anterior no dispone de la totalidad del asunto planteado por el señor Fonseca. Éste plantea en su escrito que los bienes recibidos del caudal hereditario no son recurrentes y que se cometería una injusticia de imponerle una obligación de pago de pensión. Alega que imputarle como ingreso la herencia implica determinar que todos los años recibe la misma cantidad por concepto de herencia. El asunto planteado es de gran importancia. El pago de una herencia puede tener un efecto extraordinario sobre el cómputo de la pensión al momento en que se recibe, a pesar de que no es un pago que presumiblemente se repetirá anualmente.

En el caso del señor Fonseca, la pensión alimentaria recomendada en marzo de 2008 era de $918.13 mensual.

Luego de incorporar en el cómputo el dinero de la herencia, la pensión alimentaria determinada ascendió a $1,956.84.

Similar situación puede ocurrir en situaciones, tales como el pago de una bonificación especial, comisiones extraordinarias para un año, el pago de un premio, el cúmulo y pago de horas extras para un año particular. La aplicación fría del cómputo de ingresos en situaciones atípicas, como los ejemplos enumerados, puede provocar situaciones de injusticia. Veamos qué alternativas nos provee la Ley de Sustento de Menores y las Guías Alimentarias.

Las Guías Alimentarias tienen el propósito de establecer criterios numéricos y descriptivos para facilitar el cómputo de la cuantía de la obligación alimentaria. Art. 3 de las Guías Alimentarias. Con ello en mente, las Guías Alimentarias recogen instrucciones para determinar la pensión alimentaria mediante los ingresos recibidos por los padres, la cantidad y edad de los menores alimentistas, la necesidad y los gastos de los alimentistas, entro otros criterios. Sin embargo, éstas no contemplan cómo calcular el nuevo patrimonio recibido en concepto de herencia por un alimentante. Tampoco la Ley de Sustento de Menores lo vislumbra.

En el presente caso, la examinadora de pensiones determinó sumar el salario mensual imputado, más el capital total del señor Fonseca, incluyendo la herencia que le fue adjudicada por el fallecimiento de su padre en el 2007. Ese total lo dividió entre doce para determinar un salario mensual de $7,075.

La herencia, en este caso particular, no es una entrada al patrimonio que se puede considerar como ingreso recurrente, puesto que el señor Fonseca no recibirá todos los años la misma herencia del 2007. Dividir esta partida de los activos del señor Fonseca entre doce meses y luego sumarla al ingreso mensual que se asume obtendrá el señor Fonseca por los próximos tres años, ocasiona un resultado contrario a la realidad. Se estaría utilizando el monto de esa división para fijar la pensión para los próximos tres años, a pesar de que la herencia que el señor Fonseca recibió de su padre ocurrió en un sólo año y no será recurrente. Ello, inevitablemente provocará que, al cabo del año, el señor Fonseca solicite una rebaja a su pensión porque sus circunstancias económicas y sus ingresos tendrán un cambio significativo, pues la herencia aplicada no se repetirá al siguiente año.

La Ley de Sustento de Menores dispone, como regla general, que toda orden de pensión alimentaria puede ser revisada y modificada en un término no menor de tres años, a partir de la fecha en que la orden fue establecida. Art. 19 (c) de la Ley de Sustento de Menores, 8 L.P.R.A. sec. 518 (c).

Sin embargo, la ley reconoce circunstancias extraordinarias en que un alimentante puede solicitar revisión de la cuantía de la pensión alimentaria antes del término de tres años. El estatuto de Sustento de Menores dispone, como excepción, lo siguiente:

*"El Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para revisar o modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier evidencia de cambio sustancial en circunstancias."* Artículo 19, inciso (d), *supra*, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 518, inciso (d). (Énfasis suplido).

Las Guías Alimentarias también reconocen la posibilidad de un cambio en la pensión al indicar que el juzgador podrá variar una orden de pensión alimentaria, a su discreción o a solicitud de parte, en cualquier momento y fuera del ciclo de tres años, cuando ocurra un cambio sustancial en las circunstancias del alimentista o en las de la persona custodia o no custodia, según lo establecido en el Artículo 19 de la Ley de Sustento de Menores. Artículo 4, inciso 25, Reglamento 7135: *Guías para Determinar y Modificar las Pensiones*

*Alimentarias en Puerto Rico*, *supra*, pág. 7.

Sobre el particular, el Tribunal Supremo de Puerto Rico expresó que para declarar con lugar una moción de aumento o rebaja de pensión alimentaria, antes de que se cumpla el término de tres años estipulado por la Legislatura, es necesario que el peticionario demuestre que han ocurrido cambios sustanciales significativos en las condiciones particulares que dieron margen a su fijación y que ameriten la revisión y modificación de dicha pensión. *López v. Rodríguez*, 121 D.P.R. 23, 32 (1988). Además, se expresó que un cambio sustancial en las circunstancias es aquél que afecta la capacidad del alimentante para proveer los alimentos o las necesidades de los alimentistas. En otras palabras, es el tipo de cambio que ocurre en las necesidades del alimentista o en los recursos del alimentante. *McConell v. Palau*, 161 D.P.R. 734, 748 (2004).

La tratadista Torres Peralta enumera unas circunstancias particulares que tienen un efecto sustancial en la capacidad económica del alimentante y que pueden redundar en la disminución de la pensión previamente fijada. Algunos ejemplos de estos eventos son: (1) matrimonios, (2) vida independiente de los hijos, (3) fracaso en los negocios, (4) pérdida o cambio de empleo. Sarah Torres Peralta, *op. cit.*, pág. 7.02. En definitiva, la alteración que justifica la modificación de la cuantía de la pensión tiene que ser importante y sustancial en relación con el estado anterior de fortuna de los cónyuges. Román García Varela, *La Ley de Divorcio: Experiencias de su Aplicación*, Constitución y Leyes, S.A., Madrid, España, 1982, pág. 98.

Como regla general, una orden de pensión alimentaria debe tener vigencia de tres años. El término de los tres años fijado en la Ley para el Sustento de Menores da estabilidad a las partes y permite a las familias planificar su vida consciente de la pensión que reciben o dan por un término razonable. Además, la medida evita la multiplicidad de pleitos judiciales porque de otra forma cualquier cambio en las circunstancias económicas de una u otra parte provocaría nuevos pleitos. La norma de los tres años que nos provee la Ley de Sustento de Menores es armoniosa con su propósito.

La Ley para el Sustento de Menores refleja una política pública de que las pensiones se fijen conforme a lo dispuesto en las Guías Alimentarias, pero ello no significa que la pensión debe adjudicarse en forma automática y obligatoria. *McConnell v. Palau*, *supra*, pág. 754.

El Artículo 19 de la Ley de Sustento de Menores expresa que la pensión alimentaria resultante de la aplicación de las guías se presumirá justa y adecuada y en el mejor interés del menor. Como toda presunción, podrá ser controvertida por las partes. 8 L.P.R.A. sec. 518.

¿Por qué ajustar el cómputo de la pensión para un año si somos conscientes de que, al cabo de éste, cambiará la situación económica del señor Fonseca? ¿Acaso ello no contraviene el propósito de la Ley de Sustento de Menores de que la pensión determinada se mantenga por tres años? En fin, consideramos que el pago de una herencia debe ser ajustado para que sea armoniosa con el interés de la Ley de que la pensión se fije por un período de tres años.

Al interpretar la Ley de Sustento de Menores, aplicamos importantes principios de hermenéutica legal de que la interpretación de las leyes debe ocurrir de forma integrada y salvar el propósito y objetivo que las anima. La ley debe ser interpretada conforme al propósito social que la inspira. *Piñero v. A.A.A.*, 146 D.P.R. ___ (1998); *Colegio Óptico v. Pearle*, 142 D.P.R. 221 (1977). La ley debe ser interpretada como un ente armonioso y darle sentido lógico a sus diferentes secciones y, cuando sea necesario, suplir sus deficiencias. *Hacienda v. Telefónica*, **2005 J.T.S. 37**; *Farmacias Moscoso v. K-Mart*, 138 D.P.R. 497 (1995); *Gobernador v. Alcalde Coamo*, 131 D.P.R. 614 (1992). La interpretación de la ley debe provocar un resultado lógico, sensato y razonable que represente la intención del legislador. *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735 (1992).

El balance que procuramos es armonizar, para fines de una pensión alimentaria, el impacto inmediato que

tiene el pago de una herencia y el propósito de la Ley de Sustento de Menores, de que la pensión determinada se extienda por un período mínimo de tres años, salvo la circunstancia de un cambio extraordinario de ingresos.

Cabe señalar que las Guías Alimentarias reconocen otras situaciones excepcionales que, al igual que la herencia, tienen un impacto temporal sobre los ingresos del alimentante y nos parecen apropiadas para nuestro caso. Nos referimos a los ingresos por concepto de horas extras, comisiones y propinas, reglamentado en el Art. 7 (A)(1)(d) de las Guías Alimentarias. Las Guías Alimentarias ordenan para estos casos que se compute un promedio mensual de lo recibido durante los 36 meses que anteceden a la vista. De esta forma, se reconoce el impacto en los ingresos, pero se ajusta de forma que reconozca un promedio para un término razonable.

Nos corresponde, ante la ausencia de una guía sobre la forma de adjudicar la herencia como entrada mensual de ingresos, establecer —para este caso particular—, el procedimiento para el cómputo de la pensión:

*"1) La partida que el tribunal de instancia determine que corresponde a la herencia recibida por el señor Fonseca (Ej. propiedades, dinero, entre otros) se dividirá en treinta y seis meses.*

*2) El resultado obtenido de dicha división se entenderá como ingreso mensual producto del total de activos recibidos de la herencia y como parte de los demás ingresos que se imputan al señor Fonseca.*

*3) A ese ingreso —resultado de los activos de la herencia—, se sumarán los demás ingresos mensuales que se determinaron.*

*4) El resto de los cálculos continuarán realizándose de conformidad con las Guías Alimentarias, la Ley de Sustento de Menores y la jurisprudencia interpretativa."*

Es menester dejar consignado que al disponer cómo se adjudicará —en este caso— la herencia para propósitos de la pensión alimentaria, no estamos cambiando los demás cómputos que el tribunal o los examinadores de pensiones utilizaron para determinar los ingresos mensuales del señor Fonseca. Sólo en cuanto a los activos recibidos en concepto de herencia por el señor Fonseca, es que aplicará la división en treinta y seis meses.

## V

Por todo lo antes expuesto, resolvemos expedir el auto de *certiorari*, se revoca la decisión del Tribunal de Primera Instancia y se devuelve el caso para que se efectué el computo de la pensión alimentaria conforme a lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones